IN the MATTER OF DISCIPLINARY PROCEEDINGS AGAINST
John M. TYE, Attorney at Law.

Supreme Court

*No. 82–1357–D. Filed October 11, 1982.*
(Also reported in 324 N.W.2d 692.)

PER CURIAM.  *Attorney disciplinary proceeding; attorney's license revoked.*

On July 20, 1982, the Board of Attorneys Professional Responsibility (Board) filed a complaint with the court alleging 12 counts of unprofessional conduct against John M. Tye, an attorney licensed to practice law in Wisconsin since 1976 and who practices in Milwaukee, as follows:

1.  In his representation of a client by whom he was retained in 1978 to bring a divorce action, for which he was paid $631 in fees and costs, the respondent on several occasions misrepresented to the client that the action had been filed and that the case was proceeding. In late 1979 the respondent told his client that the case was scheduled for hearing in court, and the client met the respondent at the courthouse, went to family court and observed the respondent approach and confer with the clerk, after which the respondent informed the client that the divorce had been granted. The client subsequently remarried, and he and his new wife had a child. During the next two years the client repeatedly asked the respondent when

he would receive copies of the divorce papers, and the respondent told him that they were being prepared and would be sent to him soon. Ultimately, the client and his wife learned from court records that no divorce action had ever been filed, with the result that the subsequent marriage was contrary to law and the child was illegitimate. The Board alleged that such conduct violated SCR 20.04(4), 20.32(3) and 20.35(1)(a), (b) and (c).

2. In his representation of a client by whom he was retained to recover an automobile which had been seized by state revenue agents, for which he was paid a retainer of $500, the respondent assured the client that he had put a "hold" on the forfeiture proceedings and that the automobile would not be sold at auction, which representations he repeated to the client over the next two years. The respondent never contacted the revenue department and never filed any administrative or court action to halt the auction proceedings, and the automobile was sold at state auction. The Board alleged that such conduct violated SCR 20.04(4), 20.32(3) and 20.35(1)(a), (b) and (c).

3. In his representation of a client charged with operating a motor vehicle while intoxicated, the respondent told the client that he would not need to appear at a scheduled hearing because the matter was postponed for one month. In fact, the respondent had not obtained the postponement, and when the client failed to appear in court on the originally scheduled date, a default judgment was taken against him and his operator's license was suspended. As a result, the client was discharged from his employment as a truck driver, but with the help of a new lawyer, he was able to resume employment after being out of work for two months and was able to have the default judgment reopened and his license reinstated. It was alleged that such conduct violated SCR 20.04(4), 20.32(3) and 20.35(1)(a), (b) and (c).

4. In May of 1981, the respondent agreed to file an action in circuit court on behalf of four clients seeking a

temporary restraining order to stop the sale of school land and buildings. The respondent then told one of the clients that he had filed papers instituting the action and later told another client that the case was in progress. On two occasions the respondent informed his clients that meetings had been scheduled with the judge, which were subsequently postponed or cancelled at the respondent's request. In September, 1981, the clients learned from court records that no action had been instituted by the respondent and that no appointments had been made with the presiding judge. The respondent later offered to refund the $1,500 retainer paid by the clients, and the clients agreed, but no refund was made. It was alleged that such conduct violated SCR 20.04(4), 20.32(3) and 20.35 (1)(a), (b) and (c).

5. In his representation of three clients in actions brought against them by two building contractors, for which he was paid a retainer of $250, the respondent failed to respond to a motion for summary judgment, resulting in his clients' being assessed costs of $150. A trial was later scheduled, and the respondent asked his clients to appear at the courthouse on the scheduled date, although he had not previously informed them what was likely to occur, nor had he subpoenaed any witnesses. The respondent did not tell his clients that they might be called to testify, he did not review their anticipated testimony with them, he never informed them that they would be subject to cross-examination and he did not tell them to bring supporting documents to the trial. On the day of the trial, the respondent encouraged his clients to settle the lawsuit for $10,000, and when the clients protested, he assured them that he would arrange financing for them so that they could avoid foreclosure on their home. The respondent also assured them that he would easily settle the other pending lawsuit and promised to immediately contact the other plaintiff to arrange settlement. Relying on those promises, the clients accepted the settle-

ment. Following court proceedings, the respondent failed to contact the lending institution for refinancing, failed to contact the attorney for the plaintiffs in the pending lawsuit and failed to respond to repeated telephone inquiries from his clients. It was alleged that such conduct violated SCR 20.04(4), 20.32(3) and 20.35(1)(a), (b) and (c).

6. In his representation of a client who retained him to pursue a $40,000 damage claim against an insurance agent, the respondent told the client that it would not be necessary to prepare for trial because the case had been adjourned. Subsequently, the client learned that the case had been dismissed and a judgment for $162 costs entered against him for the reason that the respondent did not send defense counsel requested discovery documents despite having made promises to do so and notwithstanding the court's decision on a motion to compel discovery that a failure to produce the requested information would result in dismissal of the action on its merits. The respondent never informed his client of the discovery requests, never asked him for information needed to provide discovery and never advised him that a motion had been filed to compel discovery. The respondent also did not tell his client that an order for judgment had been entered against him but instead misrepresented to him that the original trial date had been adjourned. The client then retained new counsel, who unsuccessfully brought a motion to reopen the judgment. It was alleged that such conduct violated SCR 20.04(4), 20.32(3) and 20.35(1)(a), (b) and (c).

7. In November of 1981, a client retained the respondent to commence a divorce action and paid him a retainer of $500 to do so. The respondent later assured his client that the divorce action had been commenced and promised to send her copies of the pleadings. Two months later the client's husband retained an attorney, and it was discovered that the respondent had not commenced the ac-

tion. The retainer was never returned to the client. It was alleged that such conduct violated SCR 20.04(4), 20.-32(3) and 20.50(2).

8. In 1976 two clients retained a law firm at which the respondent was employed as an associate attorney to represent them on a claim of wrongful conversion of their timber. The respondent subsequently left the employ of that law firm and took the file in the matter with him. Throughout the next three years the respondent assured the clients that the case was proceeding well and that he was handling the matter diligently. In spring of 1981 the clients learned that the respondent had never filed the action and that the statute of limitations on their claim had run. It was alleged that such conduct violated SCR 20.04 (4), 20.32(3) and 20.35(1)(a), (b) and (c).

9. In his representation of a client who retained him to represent him in a juvenile court proceeding concerning child custody, for which he was paid $125, the respondent failed to appear at two scheduled hearings, for which he gave no explanation. The respondent never appeared in court in connection with the matter, nor did he perform any useful services on behalf of the client. It was alleged that such conduct violated SCR 20.04(4), 20.32(3) and 20.35(1)(a), (b) and (c).

10. In August, 1980, two clients retained the respondent to represent them in a property boundary dispute, for which they paid a retainer of $250. After initial settlement efforts failed, the respondent agreed to file an action on behalf of his clients, but no lawsuit was ever filed, and the respondent made no explanation for his failure to bring the action. It was alleged that such conduct violated SCR 20.32(3) and 20.35(1)(a) and (b).

11. In May, 1980, the respondent was retained to obtain a legal separation and to compel maintenance payments. The respondent accepted a retainer to commence the action and later told the client that he had begun an action and later stated that the case was proceeding and

that he anticipated the matter to be resolved in the client's favor soon. In 1981 the defendant filed an action for divorce, following which the respondent informed his client that the court clerk's office had mixed up the files and that he was able to resolve the problem and have the two cases consolidated. In March of 1982, the respondent had his client appear at the courthouse for a hearing on maintenance payments, and when his client arrived he informed her that her husband had failed to appear and consequently had defaulted and that the client would get the full maintenance payment she had been seeking. Court records later showed that no action for legal separation had ever been commenced, there was never any consolidation of cases and no court appearance had ever taken place with respect to the divorce action, nor had any order for maintenance or support been issued or filed. It was alleged that such conduct violated SCR 20.-04(4), 20.32(3) and 20.35(1) (a), (b) and (c).

12. During the course of his employment with a law firm from 1976 until October, 1979, the respondent accepted money from a client as partial payment of the legal fee for representation but did not pay that money to the firm for which he was employed, as he was required to do, nor did he inform the firm's bookkeeper of his receipt of the money. He also retained money paid by clients in four other matters. It was alleged that such conduct violated SCR 20.04(3), 20.04(4), 20.50 and 11.05(1).

We referred the matter to the Hon. William C. Sachtjen, reserve judge, as referee, pursuant to SCR 21.09 (4). On September 9, 1982, Board counsel and the respondent's attorney entered into a stipulation in which it was agreed that the respondent is currently suffering from a medical incapacity, diagnosed as severe depression, and has been recently hospitalized for this condition, and that such condition constitutes a "medical incapacity" under SCR 21.07. The respondent stipulated that he has no defense to the allegations set forth in the disciplinary

complaint and that such allegations constitute serious professional misconduct, in violation of SCR 11.05(1), 20.04 (3), 20.04(4), 20.32(2), 20.32(3), 20.35(1)(a), (b) and (c), and 20.50.

The respondent and Board counsel stipulated that the respondent's unprofessional conduct warrants revocation of his license to practice law in Wisconsin. The respondent further acknowledged that the Board has received additional grievances from former clients in addition to those set forth in the complaint and that more grievances may be received in the future. He agreed that at such time as he applies for reinstatement of his license to practice in Wisconsin or makes application for a license to practice law in another state, those additional grievances may be reported to the appropriate investigating and licensing authorities, with reasonable notice to him and opportunity for him to dispute the accuracy of such grievances.

The referee filed his report and recommendation with the court on September 16, 1982, in which he made findings consistent with the stipulation and recommends that the respondent's license to practice law in Wisconsin be revoked and that he be ordered to pay the costs of this disciplinary proceeding within 60 days of the court's order.

We hereby adopt the findings, conclusions and recommendation of the referee.

It is ordered that the license of John M. Tye to practice law in Wisconsin is revoked effective the date of this order.

It is further ordered that John M. Tye pay to the Board of Attorneys Professional Responsibility the costs of this disciplinary proceeding in the amount of $1,903.13 within 60 days of the date of this order.